IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-10014-GAYLES/SNOW

UNITED STATES OF AMERICA

vs.

WILLIAM MATEU,

      Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Defendant William Mateu, through his counsel, moves this Court for an order dismissing Count One of the Indictment because the statute charged is unconstitutionally overbroad in violation of the First Amendment of the United States Constitution.

On or about July 27, 2022, the Grand Jury returned a one count Indictment against Defendant, alleging that Defendant

> did knowingly and willfully conspire, confederate, and agree with other persons known and unknown to the Grand Jury, to commit an offense against the United States, that is, to encourage and induce aliens to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence is and will be in violation of law, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv); all in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I).

See Indictment [DE1]. A separate Forfeiture Allegation was also included in the Indictment. *Id.*

As discussed below, Title 8, United States Code, Section 1324(a)(1)(A)(iv), is overbroad in violation of the First Amendment of the United States Constitution.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

I.  **Challenging the Overbreadth of a Statute**

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. "The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *See United States v. Hansen*, 25 F.4th 1103, 1106 (9th Cir. 2022) (quoting *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002)).

"The First Amendment doctrine of substantial overbreadth is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others." *See United States v. Hansen*, 25 F.4th at 1106 (9th Cir. 2022) (quoting *Massachusetts v. Oakes*, 491 U.S. 576, 581, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989)).

The success of a constitutional challenge ordinarily requires a showing that the statute at issue could never be applied in a permissible, constitutional manner, therefore all potential applications must be constitutional. *See United States v. Hernandez-Cavillo v. U.S.*, 39 F.4th 1297, 1301 (10th Cir. 2022) (citing *United States v. Stevens*, 559 U.S. 460, 472 (2010)). However, this requirement "is relaxed somewhat when, as here, a litigant attacks a statute as overbroad under the First Amendment." *United States v. Hernandez-Cavillo, supra* (citing *United States v. Stevens*, 559 U.S. at 473 (2010)). *See also United States v. Hansen*, 25 F.4th at 1106 (9th Cir. 2022) ("Facial overbreadth challenges are permitted because an overly broad statute may chill the speech of individuals, including those not before the court.") (citing *Massachusetts v. Oakes*, 491 U.S. at 581 (1989)).

According to the United States Supreme Court, there are two situations in which a facial overbreadth challenge can succeed: (1) when a party establishes that there is "no set of circumstances under which [the statute] would be valid or that the statute lacks any plainly legitimate sweep;" and (2) where "a substantial number of [the statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *See United States v. Hansen*, 25 F.4th at 1106-1107 (9th Cir. 2022) (quoting *United States v. Stevens*, 559 U.S. 460, 472–73 (2010)) (internal quotations and citations omitted).

"Subsection (iv) of 8 U.S.C. 1324(a)(1)(A) has some 'plainly legitimate sweep,'" therefore the analysis in the instant case focuses on the second situation. *See e.g., United States v. Hansen*, 25 F.4th at 1107 (9th Cir. 2022) (referring to the two situations in which a facial overbreadth challenge can succeed found in *United States v. Stevens*, 559 U.S. 460, 472–73 (2010)) (internal quotations and citations omitted).

**II.** **Current Case Law Challenging the Overbreadth of Title 8 U.S.C. 1324(a)(1)(A)(iv) is Persuasive Authority Why This Court Should Find Subsection (A)(iv) Overbroad and Unconstitutional**

    **a.** ***United States v. Sineneng-Smith*, ("*Sineneng-Smith I*").**

In 2018, a panel from the Ninth Circuit stated that "[s]ubsection (iv) criminalizes a substantial amount of protected expression in relation to the statute's narrow legitimate sweep; thus, we hold that it is unconstitutionally overbroad in violation of the First Amendment." *See United States v. Sineneng-Smith*, 910 F.3d 461, 485 (9th Cir. 2018) ("*Sineneng-Smith I*"). However, the United States Supreme Court vacated and remanded *Sineneng-Smith I* because "the appeals panel departed so drastically from the principle of party presentation as to constitute an abuse of discretion" by deciding the case on arguments originally raised by *amici*. *See United States v. Sineneng-Smith*, — U.S. —, 140 S. Ct. 1575, 1578, 206 L.Ed.2d 866 (2020). On

3

remand, the panel affirmed the defendant's conviction under subsection (iv) without analyzing the overbreadth challenge. *See United States v. Sineneng-Smith*, 982 F.3d 766, 776 n.3 (9th Cir. 2020), cert. denied, ––– U.S. –––, 142 S. Ct 117, 211 L.Ed.2d 36 (2021).

### b. *United States v. Raniere*

In 2019, in *United States v. Raniere*, the Eastern District of New York stated that it had "serious doubts about the constitutionality of Subsection (iv);" however the court did not have to address the issue because the Government represented that it could prove the defendant effected the crime by means of any of the three remaining subsections of § 1324 (a)(1)(A). *See United States v. Raniere*, 384 F. Supp. 3d 282, 300 (E.D.N.Y. 2019) (citing *United States v. Sineneng-Smith*, 910 F.3d 461, 471 (9th Cir. 2018) (holding that Subsection (iv) is overbroad in violation of the First Amendment)). The court concluded that it need not decide the question regarding Subsection (iv)'s constitutionality, unless after trial, the defendant believed that the Government's evidence had only proven a violation of Subsection (iv). In that case, the Court instructed Raniere that at that time, he may renew his motion to dismiss. *Id.*

### c. *United States v. Hansen*

In February 2022, in *United States v. Hansen*, a different panel from the Ninth Circuit addressed the same issue, and concluded that the overbreadth doctrine applied to § 1324(a)(1)(A)(iv), stating in pertinent part:

> We are mindful that invalidating subsection (iv) for overbreadth is " 'strong medicine' that is not to be 'casually employed.' " *Williams*, 553 U.S. at 293, 128 S.Ct. 1830 (quoting *Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S. 32, 39, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999)). However, for the reasons we have set forth above, subsection (iv) is overbroad and unconstitutional. We vacate Hansen's convictions on Counts 17 and 18 and remand to the district court for resentencing.

4

*See United States v. Hansen*, 25 F.4th at 1111 (9th Cir. 2022). The court found unconstitutional a statute that imposes criminal liability on anyone who "encouraged or induced an alien to 'enter[ ] or reside in the United States ... in violation of law.' " *Id.* at 1108 (quoting 8 U.S.C. § 1324 (a)(1)(A)(iv)). The Ninth Circuit concluded that the relevant immigration law lacked the types of textual and contextual indicators that would provide for a narrowing construction sufficient to avoid constitutional difficulty. *Id.* Furthermore, the Ninth Circuit specifically noted that a separate provision in 8 U.S.C. § 1324 (a)(1)(A) provided for aiding and abetting liability such that the challenged "encourage" and "induce" language should not be read to take on that meaning. *Id.*

### d. *United States v. Hernandez-Calvillo*

In July 2022, the Tenth Circuit also addressed the overbreadth of § 1324(a)(1)(A)(iv) under the First Amendment, where the defendant successfully moved to dismiss the indictment and the government appealed. On appeal, the Tenth Circuit affirmed the district court's decision, finding that

> Section 1324(a)(1)(A)(iv)'s plain language targets protected speech, and neither the government's nor the dissent's proposed limiting construction finds support in the statute's text or surrounding context. And when properly construed, the statute criminalizes a substantial amount of constitutionally protected speech, creating a real danger that the statute will chill First Amendment expression.

*See United States v. Hernandez-Calvillo*, 39 F.4th 1297, 1300 (10th Cir. 2022) (Baldock, J., dissenting). The Tenth Circuit concluded that "§ 1324(a)(1)(A)(iv) is substantially overbroad, and the district court properly dismissed the indictment." *Id.*

In its analysis, the Tenth Circuit determined "that Congress used *encourage* and *induce* in their ordinary sense, not in their more limited and specialized criminal-law sense." *Id.* at 1304. The Court also pointed out that if Congress intended to have encourage or induce to include criminal facilitation or solicitation, as the government argued, then "there would be a potential overlap

5

between subsections (A)(iii) ("conceals, harbors, or shields from detection" a noncitizen) and (A)(iv) ("encourages or induces an alien to come to, enter, or reside in the United States"). *See United States v. Hernandez-Calvillo*, 39 F.4th at 1303-1304 (10th Cir. 2022) (citing *United States v. Smith*, 756 F.3d 1179, 1187 (10th Cir. 2014) (noting "our duty to give effect, if possible, to every clause ... of a statute" and "reluctan[ce] to treat statutory terms as surplusage in any setting") (quoting *Duncan v. Walker*, 533 U.S. 167, 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)).

The Tenth Circuit then stated, "crucially, the very next subsection makes it a crime to "aid[ ] or abet[ ]" any of the offenses proscribed in the preceding subsections, including subsection (A)(iv)." *Id.* at 1304 (quoting § 1324(a)(1)(A)(v)(II)). "This explicit reference to aiding and abetting shows that Congress knows how to draft a facilitation provision." *Id.* However Congress "used entirely different language in subsection (A)(iv), and we generally presume that "different meanings [are] intended" when Congress uses "certain language in one part of [a] statute and different language in another." *Id.* at 1304, n.12 ("Or, as Appellees put it, this interpretation would require us to accept that 'Congress intended to criminalize aiding and abetting aiding and abetting.' This absurd result further undermines the government's interpretation.") (citations omitted).

In its analysis, the Tenth Circuit also observed that the criminal facilitation statutes that the government cited in its brief included variations of "encourage" or "induce" in a list of other verbs more directly indicating facilitation or solicitation. *See United States v. Hernandez-Calvillo*, 39 F.4th at 1305 (10th Cir. 2022) For example, the federal accomplice-liability statute applies to anyone who "aids, abets, counsels, commands, *induces*[,] or procures" the commission of a federal crime. *See Id.* (quoting 18 U.S.C. § 2(a)) (emphasis added). Accordingly, the *noscitur a sociis* canon does not apply" to subsection (A)(iv) because "[e]ncourage and induce are not part of a series of words that shed additional light on their meaning." See *United States v. Hernandez-*

6

*Calvillo*, 39 F.4th at 1306 (citing *United States v. Hansen*, 25 F.4th at 1108); also citing *United States v. Franklin*, 785 F.3d 1365, 1369 (10th Cir. 2015) (concluding that "a list of two words" is "too short for application of the canon of noscitur a sociis").

The Tenth Circuit further reasoned that facilitation and solicitation require that the underlying act be a crime, not a civil violation, such as residing in the U.S. despite removability. The Court stated that "some of the activity that subsection (A)(iv) prohibits a person from encouraging or inducing—namely, 'resid[ing] in the United States,' § 1324(a)(1)(A)(iv)—is not a crime. *Id.* at 1306 (quoting *Arizona v. United States*, 567 U.S. 387, 407, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012) ("As a general rule, it is not a crime for a removable [noncitizen] to remain present in the United States.")). "That Congress omitted these hallmarks of facilitation and solicitation—specific intent and resulting criminal conduct—bolsters our conclusion that subsection (A)(iv) uses encourage and induce in their ordinary, speech-encompassing sense," *Id.* at 1306-1307 (citing *United States v. Hansen*, 25 F.4th at 1108). The Court concluded that

> Ultimately, subsection (A)(iv) cannot bear the government's limiting construction. The ordinary meanings of encourage and induce encompass both conduct and speech, and nothing in the statutory language or surrounding context suggests that Congress gave those terms a narrower meaning akin to the criminal-law concepts of facilitation and solicitation.

The majority found it implausible to interpret (A)(iv), as the dissent suggested, to encompass only criminal solicitation.

The Court found that applying ordinary principles of statutory construction, subsection (A)(iv) proscribes at least some protected speech. *Id.* at 1309. The Court also recognized that the statute criminalizes encouragement or inducement of noncriminal acts, such as unlawfully residing in the U.S., and applies to "abstract advocacy of illegality" *Id.* (citing *U.S. v. Williams*, 553 U.S. 285, 298–99, 128 S.Ct. 1830 (2008)); also citing *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253,

7

122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it."). Even words of encouragement or inducement that do not lead to any action by a noncitizen are prohibited, the court found. *Id.* at 1309 ("So the statement to a noncitizen, 'I encourage you to [reside in the United States],' would support a conviction under subsection (A)(iv), even if the noncitizen takes no action in response to the encouragement.") (citing *Williams*, 553 U.S. at 300, 128 S.Ct. 1830).

Finally, the court examined the statute's overbreadth, first stating in pertinent part:

> Although subsection (A)(iv) criminalizes some protected speech, the provision is facially overbroad only if it criminalizes "a substantial amount of protected speech." *Williams*, 553 U.S. at 292, 128 S.Ct. 1830 (emphasis added). Or, in more practical terms, "a substantial number of instances [must] exist in which [subsection (A)(iv)] cannot be applied constitutionally." *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988). That number must be substantial "not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292, 128 S.Ct. 1830. So to assess subsection (A)(iv)'s overbreadth, we must compare its "legitimate and illegitimate applications."

In analyzing the scenarios that the government cited in its brief—"(1) procuring and providing fraudulent documents to noncitizens, (2) helping noncitizens enter the United States, (3) luring noncitizens for unlawful work, and (4) smuggling activities"—are explicitly and more narrowly proscribed in other statutes. *Id.* These redundancies, the court found, left little work for the statute at issue except to penalize "vast amounts of protected speech," potentially even including immigration attorneys' legal advice to noncitizens. *Id.* at 1311 (citing *Hansen*, 25 F.4th at 1110). The court ultimately dismissed the Indictment, concluding:

> Based on the government's examples, the statute mostly (if not entirely) proscribes conduct already made criminal by other statutes. We are therefore not convinced that invalidating subsection (A)(iv) would deprive the government of a critical enforcement tool or leave

8

> wide swaths of criminal conduct unpunished. And as much as there are some legitimate applications of subsection (A)(iv), they pale in comparison to the illegitimate ones. **The statute's plain language is "susceptible of regular application to protected expression," reaching vast amounts of protected speech uttered daily.** *Hill*, 482 U.S. at 466, 107 S.Ct. 2502. **For these reasons, we hold that subsection (A)(iv) is substantially overbroad under the First Amendment.**

*See United States v. Hernandez-Calvillo*, 39 F.4th at 1313 (10th Cir. 2022) (Baldock, J., dissenting).

### III. Examining the Statutory Construction of 8 U.S.C. § 1324(a)(1)(A)(iv)

The Eleventh Circuit holds that "[i]n interpreting written law, the Court's duty is to 'determine the ordinary public meaning' of the provision at issue." *See Heyman v. Cooper*, 31 F.4th 1315, 1319 (11th Cir. 2022) (quoting *Bostock v. Clayton County*, ⎯ U.S. ⎯, 140 S. Ct. 1731, 1738, 207 L.Ed.2d 218 (2020)). The canons of construction often "play a prominent role" in that endeavor, serving as "useful tools" to discern that ordinary meaning. *Id.* (quoting *Facebook, Inc. v. Duguid*, ⎯ U.S. ⎯, 141 S. Ct. 1163, 1173, 209 L.Ed.2d 272 (2021)) (Alito, J., concurring).

However, "the canons are not 'rules' of interpretation in any strict sense." *Id.* (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts 51* (2012)). Instead, they serve only as "presumptions about what an intelligently produced text conveys." *Id.* So the Court shouldn't treat the canons "like rigid rules," lest they'd be "le[d] ... astray." *Id.* (quoting *Duguid*, 141 S. Ct. at 1175) (Alito, J., concurring).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *See United States v. Williams*, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Title 8

U.S.C. § 1324(a)(1)(A), subsection (iv) reads: "Any person who ... encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law ... shall be punished as provided in subparagraph (B)."

As explained by the Tenth Circuit in *United States v. Hernandez-Calvillo*, Congress used encourage and induce in their ordinary sense, not in their more limited and specialized criminal-law sense. *See United States v. Hernandez-Calvillo, supra* at 1304 (10th Cir. 2022). Furthermore, if Congress intended to have encourage or induce to include criminal facilitation or solicitation, then "there would be a potential overlap between subsections (A)(iii) and (A)(iv) *See United States v. Hernandez-Calvillo*, 39 F.4th at 1303-1304 (10th Cir. 2022)

Additionally, the *noscitur a sociis* canon does not apply" to subsection (A)(iv) because "[e]ncourage and induce are not part of a series of words that shed additional light on their meaning." *See United States v. Hernandez-Calvillo*, 39 F.4th at 1306 (citing *United States v. Hansen*, 25 F.4th at 1108); also citing *United States v. Franklin*, 785 F.3d 1365, 1369 (10th Cir. 2015) (concluding that "a list of two words" is "too short for application of the canon of noscitur a sociis").

Moreover, the fact that Congress omitted these hallmarks of facilitation and solicitation—specific intent and resulting criminal conduct—should bolster this Court's conclusion that subsection (A)(iv) uses encourage and induce in their ordinary, speech-encompassing sense. *See United States v. Hernandez-Calvillo*, 39 F.4th at 1306-1307 (citing *United States v. Hansen*, 25 F.4th at 1108). Additionally, the ordinary meanings of encourage and induce encompass both conduct and speech, and nothing in the statutory language or surrounding context suggests that

Congress gave those terms a narrower meaning akin to the criminal-law concepts of facilitation and solicitation.

As described in *United States v. Hernandez-Calvillo*, Title 8 U.S.C. 1324(a)(1)(A)(iv) criminalizes encouragement or inducement of noncriminal acts, such as unlawfully residing in the U.S., and applies to "abstract advocacy of illegality" *Id.* (citing *U.S. v. Williams*, 553 U.S. 285, 298–99, 128 S.Ct. 1830 (2008)), also citing *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it.").

In *United States v. Hansen*, the Ninth Circuit also stated in pertinent part:

> Nor are the examples of protected speech encompassed by subsection (iv) a mere hypothetical parade of horribles. The government has previously argued "that giving illegal aliens advice to remain in the United States while their status is disputed constitutes felonious conduct under § 1324(a)(1)(A)(iv) because it constitutes encouragement or inducement under the statute." *See United States v. Henderson*, 857 F. Supp. 2d 191, 203 (D. Mass. 2012). **The chilling effect of subsection (iv) is substantial.**

*See United States v. Hansen*, 25 F.4th at 1110 (9th Cir. 2022) (emphasis supplied)

Subsection (A)(iv) is facially overbroad because it criminalizes a substantial amount of protected speech. *United States v. Hernandez-Calvillo, supra.* Furthermore, the statute mostly (if not entirely) proscribes conduct already made criminal by other statutes. *Id.*

The statute's plain language is "susceptible of regular application to protected expression," reaching vast amounts of protected speech uttered daily." *United States v. Hernandez-Calvillo*, 39 F.4th at 1313 (10th Cir. 2022) (quoting *City of Houston v. Hill*, 482 U.S. 451, 466, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)). Accordingly, subsection (A)(iv) is substantially overbroad under the First Amendment.

### IV. Conclusion

Defendant William Mateu was charged by Indictment with violation 8 U.S.C. 1324(a)(1)(A)(iv), which has been held unconstitutional by the Ninth and Tenth Circuits. Although subsection (A)(iv) criminalizes some protected speech, the subsection is facially overbroad because it criminalizes a substantial amount of protected speech. Defendant respectfully requests this Court grant his Motion to Dismiss the Indictment.

DATED this 25th day of October, 2022

Respectfully submitted,

_____
Martin J Beguiristain, Esq.
Fla. Bar No.: 146072
Law Office of Martin Beguiristain, P.A.
12930 SW 128 Street, Suite 103
Miami, FL 33186
o. 305.251.2302
f. 305.252.7392
martinblaw@aol.com
*Counsel for Defendant, William Mateu*

### CERTIFICATION PURSUANT TO LOCAL RULE 88.9

Pursuant to Local Rule 88.9, undersigned counsel conferred in a good faith effort with opposing counsel to resolve the issues raised in this motion and have been unable to do so.

## Certificate of Service

On this 25th day of October, 2022, I hereby certify that I served a true and correct copy of the above and foregoing by filing the same electronically with the Court's Electronic Case Management System, which effects service upon parties of record.

_____
**Martin J Beguiristain, Esq.**
*Counsel for Defendant, William Mateu*