UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-10014-CR-GAYLES/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WILLIAM MATEU,

    Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTIONS

This matter is before the Court on three different motions by William Mateu ("Defendant" or "Mateu"). First, Defendant moves to dismiss the indictment. [D.E. 18]. According to Defendant, the indictment is defective because the federal statute charged is unconstitutionally overbroad, in violation of the First Amendment to the United States Constitution. The United States of America (the "Government") filed a timely response in opposition to the motion, [D.E. 22], to which Defendant replied. [D.E. 24]. Additionally, Defendant moves this Court to exclude from trial multiple pieces of evidence, [D.E. 38], and to suppress statements he made to law enforcement authorities after he was apprehended. [D.E. 41]. The Government filed timely responses to each motion, [D.E. 40 & 45], to which Defendant did not reply. Therefore, the motions are now ripe for disposition.[1] After careful consideration of

---

[1] On October 10, 2023, the Honorable Darrin P. Gayles referred the instant motions to the undersigned Magistrate Judge. [D.E. 43].

the motions, the record, the relevant authorities, and for the reasons discussed below, Defendant's motion to dismiss the indictment, motion in limine, and motion to suppress statements [D.E. 18, 38, 41] should be **DENIED**.

## I. BACKGROUND

On July 27, 2022, a Grand Jury in the Southern District of Florida returned a single count indictment charging Mr. Mateu with conspiracy to encourage and induce aliens to enter the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). [D.E. 1]. According to the Government, on June 18, 2022, the Defendant was interdicted by the United States Coast Guard at sea approximately 12 nautical miles southeast of Key Largo, Florida. Earlier that day, the Coast Guard received a communication from the Cuban Government stating that a vessel with two persons on board had fired shots at the Cuban Border Guard and had fled in the direction of the United States. The vessel in which Defendant was interdicted, matched the description of the vessel provided by the Cuban authorities. [D.E. 22 at 2–3].

Upon boarding the vessel, U.S. Coast Guard officers conducted an initial safety sweep and located a rifle, seven magazines, and 98 rounds of ammunition on board. *Id*. With Defendant's consent, Coast Guard officers then searched one of Defendant's bags and found two pairs of night vision goggles, a ballistic helmet, tactical flashlights, a satellite phone, and a handheld GPS. *Id*. Following this, Defendant was transferred ashore for further investigation.

After being brought ashore, Defendant confessed to Homeland Security agents—during a recorded post-*Miranda* interview—that he had traveled to Cuba by

boat with his friend with the objective of retrieving his daughter, son-in-law, and grandchildren from the island. His rescue attempted, however, was thwarted by the Cuban Border Guard. *Id*. Defendant stated that once in Cuba, he and his friend were spotted by Cuban officers who started chasing them. To avoid capture by the Cuban officers, Defendant said he fired two warning shots at them, and then some additional shots, approximately 13 in total. *Id*. Defendant also signed consent forms authorizing Homeland Security to search his satellite phone and cell phone. The search yielded photos and metadata that tracked Mr. Mateu's journey from Florida to Cuba and then back to Florida. *Id*.

Defendant was indicted on July 27, 2022, for conspiracy to encourage and induce aliens to enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). [D.E. 1]. The substantive offense for the charged conspiracy was § 1324(a)(1)(A)(iv), which criminalizes encouraging and inducing aliens to come, to enter, and reside in the United States, knowing and in reckless disregard that such coming to, entry, and residence was in violation of law. *Id*.

On October 25, 2022, Defendant filed the instant motion to dismiss, challenging the constitutionality of § 1324(a)(1)(A)(iv) on First Amendment grounds. [D.E. 18]. On December 22, 2022, the Government moved for a stay on Defendant's motion to dismiss pending issuance of the Supreme Court's ruling on *United States v. Hansen*, Case No. 22-179, a case dealing with the same constitutional challenge raised by Defendant. [D.E. 26]. On June 23, 2023, the Supreme Court rendered its ruling in *Hansen*, holding that § 1324(a)(1)(A)(iv) is not unconstitutionally overbroad

3

under the First Amendment and overturning a Ninth Circuit's ruling on which Defendant's motion relies. *United States v. Hansen*, 599 U.S. 762, 774 (2023). *See* [D.E. 34 & 34-1].[2]

## II.   ANALYSIS

### *(i)   Motion to Dismiss the Indictment*

Defendant's motion to dismiss should be denied because the constitutional argument that it puts forth is untenable in light of the Supreme Court's recent decision in *Hansen*. The *Hansen* holding not only reversed the case law on which Defendant's motion relies, but it also foreclosed the feasibility of Defendant's overbreadth challenge by expressly rejecting all of the same arguments that Defendant advances here. Accordingly, because Defendant's position is contrary to Supreme Court precedent, which is the "law of the land that binds all courts," *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1508 (11th Cir. 1987), we recommend that Defendant's motion be **DEINED**.

According to Defendant, this Court should dismiss the indictment because § 1324(a)(1)(A)(iv) cannot withstand First Amendment Scrutiny. Specifically, Defendant puts forth a facial constitutional challenge to the statute, alleging that, in drafting the law, Congress used the terms "encourage" and "induce" in their ordinary sense, not in their criminal term of art sense, thus making the statute applicable to

---

[2] On October 18, 2023, the undersigned's chambers contacted Defense counsel, Martin J. Beguiristain, Esq., via telephone to inquire as to whether Defendant intended to withdraw or revise his motion to dismiss in light of the Supreme Court's *Hansen* ruling, and to ascertain whether Defendant wished to request an evidentiary hearing on any of his pending motions. Mr. Beguiristain responded in the negative.

4

broad swaths of protective speech and impermissibly overbroad under the First Amendment.[3] [D.E. 18 at 5–6]. In doing so, Defendant's motion relies on, and virtually mirrors the arguments made in, out of circuit case law that predated the Supreme Court's ruling in *Hansen*. *See id.* at 3–8 (citing, among others, to *United States v. Hansen*, 25 F.4th 1103 (9th Cir. 2022)). However, all of Defendant's arguments in support of its overbreadth claim are now at odds with Supreme Court precedent and, thus, are legally invalid.

Indeed, the 2023 decision by Justice Amy Coney Barrett expressly overturned the Ninth Circuit's prior ruling in *Hansen* and rejected all of the overbreadth allegations asserted in Defendant's motion. In short, *Hansen* involved the prosecution of a person who lured hundreds of foreigners into the United States under the false promise that he could get them U.S. citizenship through an adult adoption program. *Hansen*, 599 U.S. at 766–67. After the Ninth Circuit reversed Mr. Hansen's conviction under § 1324(a)(1)(A)(iv) on the basis that its language rendered the law facially overbroad, the Supreme Court granted certiorari and reversed the Ninth Circuit. *Id.* at 769.

In reversing the Ninth Circuit's panel, the Supreme Court expressly rejected all of the same overbreadth allegations that Defendant raises in his motion to

---

[3] The First Amendment overbreadth doctrine provides that, "[i]f the challenger demonstrates that the statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep,' then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid." *Hansen*, 599 U.S. at 770 (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)).

5

dismiss. First, the Court categorically rejected the claim that, in drafting § 1324(a)(1)(A)(iv), Congress used the terms "encourage" and "induce" in their ordinary sense, thereby making the law applicable to broad scopes of protect speech. Instead, after a survey of the historical use of both verbs throughout the federal criminal code, as well as within state criminal laws, the Court found that § 1324(a)(1)(A)(iv)'s use of "encourage" and "induce" is meant to specifically denote criminal solicitation and facilitation, thus negating Hansen's overbreadth claims:

> We hold that clause (iv) uses "encourages or induces" in its specialized, criminal-law sense—that is, as incorporating common-law liability for solicitation and facilitation. In truth, the clash between definitions is not much of a contest. "Encourage" and "induce" have well-established legal meanings—and when Congress "borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *Morissette v. United States*, 342 U. S. 246, 263 (1952); see also, *e.g.*, *United States v. Shabani*, 513 U. S. 10, 13–14 (1994).

*Id*. at 774.

Relatedly, the Court also rejected Hanse's claim that the absence of words such as "assist" or "solicit" from the statute rendered the law devoid of a specific criminal means rea, thereby making the law a sweeping restriction on speech. As the Court noted, this construction of the statute ignores the longlasting history of its text and overlooks the fact that "[w]hen Congress transplants a common-law term, the '"old soil"' comes with it. [ ]. So when Congress placed 'encourages' and 'induces' in clause (iv), the traditional intent associated with solicitation and facilitation was part of the package." *Id*. at 778–79. (quoting *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019)).

Finally, the Court in *Hansen* also dismissed the Defendant's theory that reading "encourage" and "induce" in subsection (iv) as conveying criminal facilitation and solicitation would create inconsistent internal overlaps within the statute. As the *Hansen* majority observed, such reading of the statute does not create impermissible overlap because "[c]lause (iv) criminalizes the aiding and abetting of an immigration violation, whereas clause (v)(II) prohibits the aiding and abetting of 'any of the preceding acts.' In other words, clause (v)(II) applies to aiding and abetting a first-line facilitator. Another difference: Clause (iv) criminalizes not only facilitation, but solicitation too." *Id.* at 779 n.2.

Based on these predicate findings, the Supreme Court rejected the Ninth Circuit's overbreadth ruling and upheld the constitutionality of § 1324(a)(1)(A)(iv) on its face. Indeed, the Court unequivocally foreclosed the viability of facial overbreadth First Amendment challenges on the statute by stressing that, "[e]ven assuming that clause (iv) reaches some protected speech, and even assuming that its application to all of that speech is unconstitutional, the ratio of unlawful-to-lawful applications is not lopsided enough to justify the 'strong medicine' of facial invalidation for overbreadth." *Id.* at 784 (quoting *Broadrick v. Oklahoma*, 413 U. S. 601, 613 (1973)).

In sum, following the Supreme Court's ruling in *Hansen*, which we are bound to apply, Defendant's First Amendment overbreadth claims have been rendered legally untenable. As noted earlier, the Supreme Court not only reversed the case law on which Defendant's motion relies, but it also foreclosed all of the specific

7

arguments that Defendant raises in his motion to dismiss. Accordingly, the motion to dismiss should be **DENIED**.

### *(ii)    Defendant's Motion in Limine*

Having determined that Defendant's motion to dismiss the indictment lacks merit, we turn next to Defendant's motion in limine. Mr. Mateu argues that this Court should exclude two broad categories of evidence from his trial: (i) all evidence or testimony originating from the Cuban Border Guard, unless the Cuban officers directly associated with the evidence testify at trial; and (ii) all evidence related to the firearm, magazines, and ammunition that were found in Defendant's vessel during the initial inspection of his vessel on June 18, 2022. [D.E. 28 at 2].

Starting with the first category of evidence cited by Defendant, the motion argues that "the government may seek to introduce statements, reports, and other evidence that originated from members of the Cuban Border Guard," and that the use of this testimonial evidence at trial would violate his Confrontation Clause rights under the Sixth Amendment. *Id.* at 3. While Defendant does not describe the evidence he seeks to exclude from trial with particularity, the motion in limine seems to be aimed at a communication that the U.S. Coast Guard received from the Cuban Government (the "telex") moments before Defendant's detention at sea on June 18, 2022. The telex that the Government seeks to introduce at trial states as follows:

> At 1800 lcl, Sector Key West received a TELEX from CBG of an white go-fast vessel 02 350hp outboards with undetermined # of POB, heading northbound. CBG stated the GFV shot a firearm at the CBG officer, injuring them.

[D.E. 40 at 3].

8

According to Defendant, introduction of this telex at trial in the absence of any of the Cuban officers with direct knowledge of the events would amount to an infringement of his constitutional right to confront the witnesses against him as per the Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36 (2004).[4] Specifically, Defendant alleges that this message constitutes testimonial evidence, whose potential character as public/business records, cannot exempt it from the confrontation requirements of the Sixth Amendment. [D.E. 38 at 5].

The Government responds by arguing that Defendant's reliance on *Crawford* is misplaced because the telex it seeks to introduce at trial is neither hearsay nor testimonial. [D.E. 40 at 3]. The Government submits that it plans to introduce this communication as non-hearsay—*i.e.*, not for the purposes of establishing Defendant's guilt but in order to explain why the U.S. Coast Guard interdicted his particular vessel—so Defendant's confrontational rights are not implicated. *Id*. at 3–4. In other words, the Government asserts that the telex will be presented solely to offer context regarding the U.S. Coast Guard's decision to interdict and board the vessel, not to establish Defendant's involvement in the alleged acts. Therefore, the Government posits, the Sixth Amendment's confrontational barriers are not applicable in this context. *Id*. at 5. We agree with the Government.

---

[4] The Confrontation Clause prohibits the introduction of out-of-court testimonial statements unless the declarant is unavailable to testify, and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68. "Testimony . . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. at 51 (citation and quotation marks omitted).

9

Defendant's motion should be denied because it fails to consider that the Confrontation Clause is only implicated when dealing with hearsay evidence. Indeed, Defendant's generic citations to the *Crawford* standard overlook the fact that the Confrontation Clause "does not bar the use of testimonial statements *for purposes other than* establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9. (emphasis added). This principle has been emphasized by the Eleventh Circuit on multiple occasions: "[t]here can be no doubt that the Confrontation Clause prohibits only statements that constitute impermissible hearsay." *United States v. Jiminez*, 564 F.3d 1280, 1286 (11th Cir. 2009); *United States v. Sims*, No. 19-13963, 2021 WL 4906922, at *2 (11th Cir. Oct. 21, 2021) (unpublished) ("Because Lipscomb's statements were offered to make Sims's responses understandable, the statements were admissible as serving a purpose other than establishing the truth of the matter asserted[.]") (citation and quotation marks omitted).

Yet, Defendant does nothing to address this point or rebut the Government's rationale for introducing the telex. Besides conclusorily asserting that the telex must be deemed testimonial hearsay, Defendant fails to engage with the Government's asserted non-hearsay purpose for this piece of communication. Again, as the Government makes clear in its response—to which Defendant did not reply—the telex will be introduced merely to provide context as to why the Coast Guard interdicted Defendant's vessel, rather than to establish that the facts asserted in the

telex took place, or prove Defendant's involvement in them.[5] In the absence of a reply or any sort of rebuttal from Defendant on this point, we are hard pressed to overlook the fact that the admission of this kind of evidence for the purposes of providing factual context—generally accompanied by a limiting instruction to that effect—has been regularly admitted in this and other circuits despite confrontational clause objections. *See*, *e.g.*, *United States v. Gutierrez*, 810 F. App'x 761, 765–66 (11th Cir. 2020) (unpublished) (finding that a witness's out-of-court statement was used as context to explain how an investigation began and "were relevant to explain subsequent investigative actions" and therefore did not violate the Confrontation Clause); *United States v. Cruz*, 508 F. App'x 890, 899 (11th Cir. 2013) (unpublished) ("the statements . . . were not offered for the truth of the matter asserted, but were instead offered to provide a context for Roberto Cruz's statements. Therefore, these statements were not hearsay and their admission did not violate the Confrontation Clause."); *United States v. Augustin*, 661 F.3d 1105, 1128–29 (11th Cir. 2011) (unpublished) ("Because Master Athea's statements were offered only for context, and not for the truth of the matters asserted, their admission did not violate the Confrontation Clause."); *United States v. Valdes-Fiallo*, 213 F. App'x 957, 961 (11th Cir. 2007) (unpublished) ("statements are not hearsay because they were not used to prove the truth of the matter asserted, but rather, merely to provide context, and thus, do not run afoul of the Confrontation Clause.").

---

[5] Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

Accordingly, because it is undisputed that the Government will introduce the telex only for the purposes of providing some of the factual context surrounding the USCG's investigation and interdiction of Defendant's vessel on June 18, 2022, Defendant's Confrontational Clause arguments are unavailing.

Next, we quickly dispose of Defendant's second argument: that all evidence of the firearm, magazines, and ammunition that were found in Defendant's vessel should be excluded on relevancy and undue prejudice grounds. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, among other things, the statute charged requires the prosecution to establish that Defendant acted with the perquisite knowledge or reckless disregard that his actions were related to a violation of law. § 1324(a)(1)(A)(iv). In our view, evidence that Defendant saw the need to take a weapon and ammunition with him on his Cuban incursion tends to show that the Defendant knew that the manner in which he planned to remove his family from Cuban and bring them into the United States was not only dangerous but also in violation law. Because knowledge of unlawfulness is one of the required elements in the statute charged, these pieces of evidence bear a direct relationship to an element of consequence in this cation. Thus, this evidence is admissible under Rule 401.

Likewise, Defendant's argument that Fed. R. Evid. 403 calls for exclusion of this evidence lacks merit. The rules of evidence permit the exclusion of relevant evidence when the probative value is substantially outweighed by danger of unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and/or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Courts are cautioned to use Rule 403 sparingly, *see*, *e.g.*, *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983), in part because the federal rules favor admission of evidence and in part because relevant evidence is inherently prejudicial to a criminal defendant. *See id.* (citing to other sources).

We are unpersuaded by Defendant's conclusory allegations that evidence of the weapon and the ammunition found on his vessel are subject to Rule 403 exclusion. Contrary to Defendant's undeveloped suggestion that this evidence is being dragged by the heels, evidence of the weapon and ammunition is certainly probative and material to the Government's case-in-chief, as it will be used to establish an element of the alleged crime. *See United States v. Cody*, 460 F. App'x 825, 827 (11th Cir. 2012) (The photographs [of defendant holding a firearm] were [ ] probative of [his] state of mind. Given that the balance under Rule 403 should be struck in favor of admissibility, . . . we see no error in the district court's decision to admit the photographs into evidence.") (citation and quotation marks omitted).

We also fail to discern how introduction of this evidence would be improper in light of the fact that these objects bear a direct connection to the alleged events: Defendant took this weapon with him in his journey and actually fired it at the Cuban border guards as he fled from their jurisdiction. In other words, evidence of the firearm and ammunition is intrinsic to Defendant's alleged conduct. *See United States v. Dixon*, 901 F.3d 1322, 1344–45 (11th Cir. 2018) (noting that evidence is

admissible if it "arose out of the same transaction or series of transactions as the charged offense, is necessary to complete the story of the crime, or is inextricably intertwined with the evidence regarding the charged offense.") (citation and quotation marks omitted); *see also United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) ("Relevant evidence is inherently prejudicial; but it is only Unfair prejudice, Substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing"). Thus, Defendant's motion in limine should be **DENIED**.

### *(iii)    Defendant's Motion to Suppress*

Finally, we turn to Defendant's motion to suppress statements. [D.E. 41]. Here, Defendant moves this Court to suppress all the incriminating statements he made to U.S. government officers after his vessel was interdicted by the U.S. Coast Guard. Defendant's argument is twofold. First, he argues that the statements he made to the Coast Guard ("USCG") and Customs and Boarder Protection ("CBP") officers during the initial inspection and boarding of his vessel at sea should be suppressed pursuant to Florida's accident report privilege, as codified in Fla. Stat. § 316.066(4). Second, Defendant claims that his post-*Miranda* confession to Homeland Security Investigations ("HSI") officers should be suppressed because the officers never expressly told him that a criminal investigation had officially began, in contravention to Florida's accident report privilege case law. For the reasons that follow, we are unpersuaded by Defendant.

First, it is settled law in this Circuit that statements made in response to routine questions during USCG initial boardings are admissible at trial. "This [C]ircuit has long recognized that the Coast Guard's routine stop, boarding[,] and inspection of an American vessel on the high seas does not normally rise to the level of custodial detention thus requiring *Miranda* warnings." *United States v. Gruezo*, 66 F.4th 1284, 1292 (11th Cir. 2023) (quoting *United States v. Rioseco*, 845 F.2d 299, 302–03 (11th Cir. 1988)). Here, it is undisputed that USCG officers conducted a basic initial safety sweep of Defendant's vessel upon his interdiction. It is also undisputed that in response to routine USCG boarding question Defendant admitted to having attempted to pick up Cuban nationals and having shot at Cuban officers. Defendant does not dispute, and nothing in the record indicates, that the USCG's initial boarding of Defendant's vessel in June 2022, or the ensuing questions, were not of a routine nature. Thus, Mr. Mateus statements are admissible. *See Rioseco*, 845 F.2d 299, 303 (defendant not in custody during initial boarding and *Miranda* not necessary despite fact that the USCG officers had probable cause; five armed USCG officers boarded the vessel; crew members were not free to leave; and officers elicited incriminating answers).

Defendant hangs his hat on the applicability of the Florida accident report privilege as a bar to these statements; although original, the argument lacks any merit. In pertinent part, Fla. Stat. § 316.066(4) provides:

> Except as specified in this subsection, each crash report made by a person involved in a crash and any statement made by such person to a law enforcement officer for the purpose of completing a crash report required by this section shall be without prejudice to the individual so

15

reporting. Such report or statement may not be used as evidence in any trial, civil or criminal.

A brief reading of the provision's straightforward language makes clear that the statutory privilege does not extend to the facts in this case. To underscore the obvious, Defendant's interdiction bears no relationship whatsoever to traffic on highways, Defendant was not "a person involved in a crash", there was no crash investigation underway, the USCG did not make a "crash report", and none of Defendant's statements were made "for the purpose of completing a crash report." *See Maddox v. State*, 923 So. 2d 442, 446, 448 (Fla. 2006) (noting that the chapter within which the provision is found, as well as its sister provisions, were aimed at "the regulation of traffic on highways"); *State v. Bender*, 357 So. 3d 697, 701 (Fla. Dist. Ct. App. 2023) (explaining that § 316.066 requires a "crash investigation"); *State v. Cino*, 931 So. 2d 164, 167 (Fla. Dist. Ct. App. 2006) (the privilege only applies to "the crash report[s] or statements made to law enforcement during a traffic investigation by persons involved in the crash."). Defendant does not cite a single case in which this statutory privilege has been applied in the maritime context and, as far as we can tell, none exist. Thus, we discern no factual or legal grounds to extrapolate from a narrowly defined privilege intended for traffic accidents on land a legal principle that contradicts longstanding Eleventh Circuit precedent. The statements made by Defendant during the initial boarding should be admitted at trial.

Defendant's argument that the post-*Miranda* statements he made to HSI agents should be suppresses is also unavailing. The Fifth Amendment provides that

16

"[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In furtherance of the Fifth Amendment's mandate against self-incrimination, The Supreme Court requires trial courts to "exclude from evidence any incriminating statements an individual makes before being warned of his rights to remain silent and to obtain counsel." *United States v. Luna-Encinas*, 603 F.3d 876, 880 (11th Cir. 2010); *see Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Defendant does not dispute that that the HSI agents who interviewed him at the Islamorada station told him he was being detained and read his *Miranda* rights. Instead, Defendant seems to suggest that because the HSI agents never expressly stated that they were commencing a criminal investigation against him, his *Miranda* waiver and confession were involuntary. Here, again, Defendant relies on the application of the accident report privilege. Specifically, Defendant cites to a Florida Supreme Court case that held that in order to remove statements from the accident report privilege at trial, the officer conducting the accident investigation must first expressly advise the defendant that the inquiry is no longer an accident investigation but a criminal one. [D.E. 41 at 9] (quoting *State v. Marshall*, 695 So.2d 686, 687 (Fla. 1997)).

As noted above, the accident report privilege does not apply to this case.[6] Instead, Defendant's waiver and confession are governed by "the usual rules and

---

[6] Yet, even if this were a case arising from a traffic accident, the applicability of § 316.066 would not render Mr. Mateu's confession invalid. Defendant's reading of Florida precedent misconstrues the interplay between § 316.066 and a defendant's

17

precepts associated with *Miranda*[.]" *State v. Bender*, 357 So. 3d 697, 701 (Fla. Dist. Ct. App. 2023). And as the Government points out, "'no talismanic incantation [is] required to satisfy its strictures.'" *United States v. Harris*, 151 F. App'x 882, 885 (11th Cir. 2005) (quoting *California v. Prysock*, 453 U.S. 355, 359 (1981)). Instead, all that is required from the Government is that its warning "touche[s] all of the bases required by *Miranda*[.]" *Id.* (enumerating such bases as: (i) an instruction that the accused has the right to remain silent; (ii) an admonition that all statements can be used against the accused; (iii) an instruction that the accused has the right to a lawyer; and (iv) information that, if the accused is indigent, a lawyer will be appointed to him or her).

    Here, it is undisputed that the Defendant, in a recorded statement, was properly read his *Miranda* rights, that he made a knowing, intelligent, and voluntary waiver of his *Miranda* rights, and subsequently agreed to tell truth. [D.E. 45 at 4–5]. Contrary to Defendant's claims, nothing more was required to make his statements admissible at trial in harmony with his Fifth Amendment rights.

---

Fifth Amendment right against self-incrimination. The statutory privilege created by § 316.066 is not meant to expand the breath of the requirements embodied in *Miranda*, but merely to severe as a self-incrimination buffer for defendants involved in traffic accidents wherein *Miranda* might not be immediately triggered. *See State v. Norstrom*, 613 So. 2d 437, 440 (Fla. 1993) ("We hold that the privilege granted by section 316.066 is not applicable in this case where Norstrom was not told that he had to respond to the questions asked by the officers and where Norstrom was given his *Miranda* rights."); *Marshall*, 695 So. 2d at 686 ("To clarify our decision, we emphasize that the privilege granted under section 316.066 is applicable **if no** *Miranda* warnings are given.") (emphasis added).

Defendant also seems to suggest, albeit in undeveloped fashion, that the HSI agent who interviewed him engaged in deceit thereby negating the voluntary nature of his confession. This argument lacks merit. Defendant refers to a specific portion of the recorded conversation where the HSI agent told Defendant that he was not arrested but was instead being detained. [D.E. 41 at 9] ("Defendant: I'm being arrested then? Agent Medina: Right now, you're detained. Defendant: Okay."). But even if we were to construe Agent Medina's answer as a lie, the Eleventh Circuit has held that deception alone does not negate the voluntariness of a statement. *See United States v. Castaneda-Castaneda*, 729 F.2d 1360, 1363 (11th Cir. 1984) ("Although the [defendants] were subjected to police deception in a foreign environment, their interrogation was sufficiently free of coercive elements to render their confessions voluntary"); *United States v. Grossman*, 233 F. App'x 963, 967 (11th Cir. 2007) ("The agents' use of the ruse that a real mother and daughter were involved, that the mother was arrested, and that the daughter was placed in protective custody does not diminish the non-coercive nature of the interview."). Defendant does not argue, and the record does not reflect, that his interview with the HSI agents contained any indicia of coercion. Indeed, one could arguably say that, by being told that he was being detained rather than arrested, the coercive pressures of the interrogation were only reduced. Therefore, the statements he made to the HSI agents are admissible at trial and Defendant's motion to suppress should be **DENIED**.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion to Dismiss the Indictment [D.E. 18], Motion in Limine [D.E. 38], and Motion to Suppress Statements [D.E. 41] should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have until **November 24, 2023**, to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 10th day of November 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge